IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**SUPER TRUCK STOP 35-55, LLC;**                                                  **PLAINTIFFS**
**JAGIR SINGH; MANJIT SINGH JOHAL;**
**and SANJAY KUMAR**

**V.**                                                               **NO. 4:15-CV-125-DMB-JMV**

**NISSI INSURANCE SOLUTIONS, LLC,**
d/b/a as Horizon Insurance Group; **MICHAEL**
**WELLS; CERTAIN UNDERWRITERS AT**
**LLOYD'S LONDON SUBSCRIBING TO**
**POLICY NUMBER LBW522102;**
**NORTHLAND INSURANCE COMPANY**
d/b/a Northfield Insurance Company;
**and JOHN DOES 1-10**                                                  **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Before the Court are: (1) "Plaintiffs' Motion to Remand," Doc. #13; and (2) "Defendant, Northland Insurance Company d/b/a Northfield Insurance Company's, Response in Opposition to Plaintiffs' Motion to Remand and Motion to Sever," Doc. #19.

**I**
**Procedural History**

**A. State Court Action**

On August 10, 2015, Super Truck Stop 35-55, LLC ("Super Truck"), Jagir Singh, Manjit Singh Johal, and Sanjay Kumar filed a complaint in the Circuit Court of Carroll County, Mississippi, against Nissi Insurance Solutions, LLC ("Nissi Insurance"), Michael Wells, Certain Underwriters at Lloyd's London Subscribing to Policy Number LBW522102 ("Underwriters"), Northland Insurance Company ("Northland"),[1] and "John Does 1–10," regarding the handling of their insurance claim for fire loss damage sustained by 35/55 Truck Stop in Vaiden, Mississippi. Doc. #2. Against

---
[1] According to the initial complaint filed in state court and the amended complaint filed in this Court, Northland does business as Northfield Insurance Company. Doc. #2; Doc. #15.

Underwriters and Northland, the complaint sought a declaratory judgment "constru[ing] the pertinent … provisions" of the insurance policies issued by them and, from Underwriters, damages for a wrongful denial of the insurance claim. *Id.* at ¶¶ 23–28. Against Nissi Insurance and Wells, the complaint asserted negligence claims and sought "actual, compensatory and incidental damages." *Id.* at ¶ 33. The complaint alleged that: (1) Sanjay is a "Mississippi resident;" (2) Super Truck "is a Mississippi Limited Liability Company in good standing;" (3) Jagir and Manjit are "Mississippi resident[s]" and members of Super Truck; (4) Nissi Insurance is a "Mississippi Limited Liability Company in good standing;" (5) Wells "is the owner, agent and/or principle [sic] of [Nissi Insurance];" (6) Northland is a "foreign insurance company;" and (7) Underwriters "is believed to be the Member or Members and/or Names that assumed the risks covered by Certificate Number LBW522102 and Contract Number BO621F3305514 to Super Truck Stop …." *Id*. at ¶¶ 1–8.

Northland was provided with a copy of the state court complaint on or about August 12, 2015. Doc. #1 at ¶ 3. Wells and Nissi Insurance were served with the complaint on August 20, 2015. Doc. #3-7; Doc. #3-9. Underwriters was served on or about August 24, 2015. Doc. #1 at ¶ 3.

### B. Removal

On September 10, 2015, Northland removed the state court action to this Court, alleging diversity jurisdiction. Doc. #1. Specifically, in its notice of removal Northland alleges that "[a]ccording to the Complaint … Jagir Singh, Manjit Singh Johal and Sonjay [sic] Kumar are adult resident citizens of the State of Mississippi;" that Wells is a "resident citizen of Philadelphia, Neshoba County, Mississippi," and that "[i]t is undisputed that Underwriters is a foreign insurer with its principal place of business in a state other than Mississippi."[2] Doc. #1 at ¶¶ 5–6. The notice of removal also alleges that "Super Truck Stop 3-5-55 [sic], LLC, is a Mississippi Limited Liability

---

[2] An allegation that a party is not a citizen of a state is insufficient to invoke diversity jurisdiction. *Getty Oil Corp., a Div. of Texaco, Inc. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988).

Company ...." *Id*. at ¶ 5. Northland urges the Court to disregard the citizenship of Nissi Insurance and Wells ("Agent Defendants"), asserting that they were "fraudulently joined or, alternatively, fraudulently misjoined." *Id*. at 3.

On September 17, 2015, Northland answered the state court complaint. Doc. #4. The Agent Defendants answered the following day. Doc. #5. On September 23, 2015, Underwriters filed a separate notice of removal, also alleging diversity jurisdiction. Doc. #7. Underwriters states in its notice of removal that it consented to Northland's removal, and urges the Court to disregard the Agent Defendants' citizenship because Nissi Insurance and Wells "have been fraudulently joined or mis-joined in this action solely to defeat diversity jurisdiction."[3] *Id.* at ¶ 6.

On September 30, 2015, Underwriters answered the state court complaint and counterclaimed against the plaintiffs for a "judicial declaration ... regarding its legal rights and obligations for claims asserted by [the plaintiffs]." Doc. #8; Doc. #9 at ¶ 9. The same day, Underwriters cross-claimed against Northland, also seeking a "judicial declaration ... regarding its legal rights and obligations for claims pursuant to a policy of insurance subscribed to by [Underwriters]." Doc. #10 at ¶ 9. On October 7, 2015, Northland answered the cross-claim and the plaintiffs answered the counterclaim. Doc. #11; Doc. #12.

### C. Motion to Remand and Amended Complaint

On October 8, 2015, the plaintiffs filed the instant motion to remand with three attached exhibits."[4] Doc. #13.

---

[3] Underwriters made no additional allegations concerning the citizenship of the plaintiffs. As to its own citizenship, Underwriters alleges that the "[u]nderwriters subscribing to [the policy at issue] comprise three syndicates ... [n]one [of which] has [sic] any names in Mississippi, and all three comprise 100% corporate capital that are [sic] incorporated in the United Kingdom with the principal place of business in London." Doc. #7 at ¶ 5. As noted above, citizenship may not be shown by alleging that a party is not a citizen of the subject state. *See* note 2 *supra*.

[4] In violation of Local Uniform Civil Rule 7(b)(2), the plaintiffs failed to provide a meaningful description for each filed exhibit.

3

On October 12, 2015, the plaintiffs filed an amended complaint, naming the same defendants and including the same counts as in their initial complaint. Doc. #15. The next day, on October 13, 2015, the plaintiffs filed a motion requesting that this case be stayed pending a ruling on the motion to remand. Doc. #16. On October 14, 2015, United States Magistrate Judge Jane M. Virden stayed the attorney conference, disclosure requirements, and all discovery not relevant to the motion to remand. Doc. #17.

On October 22, 2015, Northland filed two identical documents—a response in opposition to the motion to remand and a motion to sever under Federal Rule of Civil Procedure 21.[5] Doc. #18; Doc. #19. That same day, Northland answered the amended complaint. Doc. #20.

On October 23, 2015, Underwriters responded in opposition to the motion to remand and, on October 29, 2015, the plaintiffs filed a combined reply to the responses filed by Northland and Underwriters. Doc. #22; Doc. #24. On November 4, 2015, Underwriters responded to Northland's motion to sever, asking the Court to deny Northland's request to be severed "from the other co-Defendants should this Court remand." Doc. #27 at 1–2.

On March 30, 2016, the Court issued an order for Northland to show cause "why this matter should not be remanded due to the absence of diversity under 28 U.S.C. § 1332." Doc. #31 at 4. The order to show cause gave Northland fourteen days to submit competent evidence "identifying all of the members of Super Truck and [Nissi Insurance], and the citizenship of each member as of September 10, 2015, … and … identifying the state of incorporation and principal place of business of [Northland] and [Underwriters]." *Id*. at 4 (footnote omitted). Northland responded to the show cause order on April 12, 2016. Doc. #32. Of relevance here,[6] Northland's response includes an

---

[5] In violation of Local Uniform Civil Rule 7(b)(2), Northland failed to file a memorandum brief as a separate docket entry.

[6] Because this case will be remanded based on the undisputed citizenships of Sanjay and the Agent Defendants, the Court need not evaluate the citizenship of the other parties referenced in the show cause order.

allegation that, "[a]t the time of the filing of [the] Notice of Removal, the sole member of [Nissi Insurance] was Michael Wells."[7] Doc. #32 at ¶ 2.

## II
## Plaintiffs' Motion to Remand

The plaintiffs seek remand under 28 U.S.C. § 1447, which provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." In their motion to remand, the plaintiffs contend that the non-diverse Agent Defendants were properly joined. Doc. #13 at ¶ 3. Further, the plaintiffs request "an award of the reasonable costs and attorney fees incurred … in securing [remand]." *Id.* at ¶ 6.

### A. Improper Joinder of Agent Defendants

#### 1. Applicable law

"The right to remove a case from state to federal court derives solely from the statutory grant of jurisdiction in 28 U.S.C. § 1441." *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988). 28 U.S.C. § 1441 provides that "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

##### *a. Diversity jurisdiction*

Article III, Section 2 of the United States Constitution provides, "The judicial Power shall extend to all Cases, in Law and Equity, … between Citizens of different States …." 28 U.S.C. §

---

[7] Given the representation in the response to the order to show cause, and the undisputed Mississippi citizenship of Wells, the Court will assume, for the purpose of deciding the instant motion to remand, that Nissi Insurance is a citizen of Mississippi. *See Hill v. Olin Corp.*, No. 07-cv-0054, 2007 WL 1431865, at *2 (S.D. Ill. May 14, 2007) ("Thus, while the Court ordinarily would require Olin to amend its notice of removal to allege properly Hill's citizenship for diversity purposes, on the state of the record the Court sees no reason not to assume for purposes of the instant motion for remand that Hill in fact is an Illinois citizen.") (collecting cases).

1332 adds two requirements for the diversity jurisdiction of federal district courts: (1) complete diversity between the parties and (2) an amount in controversy in excess of $75,000. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Complete diversity "requires that all persons on one side of the controversy be citizens of different states than all persons on the other side." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (quoting *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004)).

### b. Improper joinder

"The improper joinder doctrine constitutes a narrow exception to the rule of complete diversity."[8] *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011). "To establish improper joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id*. The "heavy" burden of showing improper joinder rests with the removing party. *Id*. "Because removal raises significant federalism concerns, the removal statute is strictly construed 'and any doubt as to the propriety of removal should be resolved in favor of remand.'" *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (quoting *In re Hot-Hed, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007)).

The inquiry into a plaintiff's ability to establish a cause of action under state law centers on "whether the [removing] defendant has demonstrated that there is no possibility of recovery by the plaintiff against a [non-diverse] defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against [the non-diverse] defendant." *Smallwood*, 385 F.3d at 573. In "predicting whether a plaintiff has a reasonable basis of recovery," the district court initially conducts a Federal Rule of Civil Procedure "12(b)(6)-

---

[8] *See Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 571 (5th Cir. 2004) (en banc) (9-7 decision) ("We adopt the term 'improper joinder' as being more consistent with the statutory language than the term 'fraudulent joinder,' which has been used in the past. … [T]here is no substantive difference between the two terms ….").

6

type analysis … to determine whether the [state court] complaint states a claim under state law."[9] *Id.* at 573. This Rule 12(b)(6)-type analysis requires "a simple and quick exposure of the chances of the claim against the … defendant alleged to be improperly joined." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 208 n.57 (5th Cir. 2016) (quoting *Smallwood*, 385 F.3d at 574).

"[I]n cases where the plaintiff stated a claim but 'misstated or omitted discrete facts,' the district court has discretion to pierce the pleadings and conduct a summary inquiry. *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 n.6 (5th Cir. 2005) (quoting *Smallwood*, 385 F.3d at 573). Such a summary inquiry "is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery" against the defendant alleged to be improperly joined. *Smallwood*, 385 F.3d at 573.

## 2. Analysis

Northland and Underwriters ("Removing Defendants") do not dispute that the Agent Defendants share Mississippi citizenship with the plaintiffs. The question here then is whether the Removing Defendants have demonstrated that the plaintiffs have no possibility of recovering on their negligence claims against the Agent Defendants. To this end, the Removing Defendants argue that the plaintiffs' claims against the Agent Defendants are barred by the duty-to-read and imputed knowledge doctrines. Doc. #18 at 3; Doc. #22 at 3.

The elements of a negligence claim under Mississippi law are duty, breach of duty, proximate cause, and damages. *Mladineo v. Schmidt*, 52 So.3d 1154, 1164 (Miss. 2010). Under Mississippi law, "[a]n insurance agent must use that degree of diligence and care … which a reasonably prudent person would exercise in the transaction of his own business." *Id.* at 1162 (alteration omitted).

---

[9] *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 265 (5th Cir. 1995) (stating "general rule" that, in context of fraudulent joinder, "removal jurisdiction should be determined on the basis of the state court complaint at the time of removal ….").

7

Regarding particular duties, "it is well-settled that if an insurance agent or broker with a view to being compensated agrees to procure insurance for another and through fault or neglect fails to do so, he will be liable for any damage that results thereby." *Id.* at 1164. Further, though "insurance agents in Mississippi [do not] have an affirmative duty to advise buyers regarding their coverage needs," if an agent offers "advice to insureds, they have a duty to exercise reasonable care in doing so." *Id.* at 1163.

Notwithstanding the duties placed on an insurance agent, the insured has a duty to read his insurance policy. *Id.* at 1161–62. Based on this duty, "knowledge of an insurance policy is imputed to an insured regardless of whether the insured read the policy." *Id.* at 1162. However, the duty to read, and thus the corresponding imputed knowledge, may not act as a defense to an insurance agent's alleged negligence in advising an insured about coverage needed. *Id*. at 1163. Where a plaintiff seeks to recover for an insurance agent's alleged "omissions and misrepresentations," the duty-to-read and imputed knowledge doctrines may act as a defense, but only if the omissions and misrepresentations are ones that "would have been disclosed by reading the [insurance] policy." *Id.* at 1162–63.

Here, the state court complaint alleged that Jagir contacted Wells to procure commercial liability and property insurance for the truck stop and Wells, through his business Nissi Insurance, procured insurance through Underwriters. *See* Doc. #2 at ¶¶ 16–17. The state court complaint further alleged that Wells "failed to follow the policies and procedures of Underwriters" in submitting insurance forms and that Underwriters has denied the plaintiffs' claim under the policy by claiming "that there were misrepresentations on the application which could support voiding its policy." *Id*. at ¶¶ 20, 32. Additionally, the state court complaint alleged that Underwriters has delayed payment "because there are unresolved questions with respect to the ownership of …

8

inventory and [because] it does not have documents showing a transfer of … interest … to the Super Truck Stop entity ...." *Id*. at ¶ 20. Based on these allegations, the plaintiffs alleged that they "reasonably relied" on Wells "to: (1) properly inspect the 35/55 Truck Stop; (2) properly investigate and analyze their insurance needs; (3) properly advise and consult with them concerning the coverage needed; (4) to [sic] properly apply for the insurance coverage; and (5) to [sic] properly procure the insurance coverage." Doc. #2 at ¶ 30. The complaint alleged that the Agent Defendants breached each of these duties and that the breaches damaged the plaintiffs in the form of lost insurance proceeds. *Id*. at ¶¶ 31, 33.

In their motion to remand, the plaintiffs argue:

> Wells undertook to properly apply for and procure the policy from [Underwriters]. Jagir and Manjit reasonably relied on Mr. Wells to provide [Underwriters] with the information it needed to properly underwrite any policy issued. Based on the fact that [Underwriters] has refused to pay any insurance coverage, and is now attempting to void said policy based on the application and information provided by Mr. Wells, these Plaintiffs have a viable negligence claim.

Doc. #14 at 6.

In sum, the plaintiffs have alleged a duty (the duty to procure insurance coverage), a breach (failure to include documents with the application and the inclusion of misrepresentations in the application), damages (denial of insurance proceeds), and causation (denial because of the breaches). There is no indication that the missing documents or the misrepresentations allegedly made by Wells in the policy application would have been disclosed by reading the policy. Accordingly, the Court cannot conclude that the duty to read bars the plaintiffs' claims. The Court thus concludes that the plaintiffs have stated a claim for negligence against Wells and that, therefore, Wells has not been improperly joined. *See Young v. Safeway Ins. Co.*, 807 F.Supp.2d 599, 601, 603–04 (S.D. Miss. 2011) (no fraudulent joinder on "simple negligence" claim against insurance agent for agent's

improper instructions on how to complete application for insurance policy). The Agent Defendants, therefore, are not improperly joined.[10]

## B. Fraudulent Misjoinder of Claims Against Agent Defendants

As relevant to the Removing Defendants' allegation of "fraudulent[] misjoinder," the plaintiffs argue that "[it is] uncertain if misjoinder is actually a valid basis for removal." Doc. #14 at 7. Alternatively, the plaintiffs contend that "assuming for the sake of argument that misjoinder is a valid basis for removal," because "joinder of all claims is … [neither] egregious [n]or totally unsupported," remand is still required. *Id.* at 7, 9.

### 1. Applicable law

#### a. *Tapscott* and Fifth Circuit consideration

The Eleventh Circuit in *Tapscott v. MS Dealer Service Corporation* held that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." 77 F.3d 1353, 1360 (11th Cir. 1996), *overruled in part on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1076–77 (11th Cir. 2000). The *Tapscott* court reasoned that "[a] defendant's 'right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy.'" *Id.* (quoting *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)).

In *Tapscott*, a diverse out-of-state defendant was brought into a putative class action after two plaintiffs were permissively joined, though the two new plaintiffs were the only ones with claims against the new defendant. *Tapscott*, 77 F.3d at 1355 & n.1. The new claims arose out of the same state law as the other plaintiffs' claims against the other defendants but from transactions involving separate sales of different products—specifically, the claims between the newly joined parties related

---

[10] No defendant has asked the Court to pierce the pleadings in conducting the improper joinder analysis, and the Court otherwise declines to do so.

to sales of service contracts on retail products while the claims between the previously joined parties related to sales of service contracts on automobiles. *Id.* at 1355. In effect, "two entirely distinct lawsuits had been merged into one, the only link between them being the invocation of Alabama's fraud statute." *Johnson v. Glaxo Smith Kline*, 214 F.R.D. 416, 420 (S.D. Miss. 2002) (*citing Tapscott*, 77 F.3d at 1360). *Tapscott* endorsed a rule of fraudulent misjoinder under which "egregious" misjoinder of a non-diverse, in-state defendant is a form of "fraudulent joinder." *Tapscott*, 77 F.3d at 1360.

The Fifth Circuit has, on two separate occasions, expressed support for the concept of fraudulent misjoinder without actually adopting the doctrine. *See In re Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th Cir. 2002) ("*Benjamin Moore I*") (citing *Tapscott* and observing that "it might be concluded that misjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction"); *In re Benjamin Moore & Co.*, 318 F.3d 626, 630–31 (5th Cir. 2002) ("*Benjamin Moore II*") (noting that holding was not intended to "detract[] from the force of the *Tapscott* principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction …."). More recently, in *Crockett v. R.J. Reynolds Tobacco Co.*, the Fifth Circuit used a footnote "*Cf.*" citation of *Tapscott* in an opinion applying the voluntary-involuntary rule[11] for removal to "an unappealed severance, by a state court, of claims against improperly joined defendants." 436 F.3d 529, 533 & n.5 (5th Cir. 2006) ("[I]f … [Rule 20] requirements are not met, joinder is improper even if there is no fraud in the pleadings and the plaintiff does have the ability to recover against each of the defendants. *Cf. Tapscott* ….").

---

[11] Under "the judicially-created 'voluntary-involuntary' rule[,] an action nonremovable when commenced may become removable thereafter only by the voluntary act of the plaintiff." *Crockett*, 436 F.3d at 532 (internal quotation marks omitted).

### b. District court application of Tapscott

A majority of district courts in the Fifth Circuit, "based on *Benjamin Moore I & II* and/or *Crockett* … have taken the position that the Fifth Circuit has adopted, or at least appears to have adopted, *Tapscott*." *Palermo v. Letourneau Techs., Inc.*, 542 F.Supp.2d 499, 515 (S.D. Miss. 2008) (collecting cases).[12] Conversely, a minority of district courts in this circuit have declined to adopt a rule of fraudulent misjoinder as a basis for removal but have nevertheless applied the *Tapscott* rule as an alternative holding in considering remand. *Moore v. SmithKline Beecham Corp.*, 219 F.Supp.2d 742, 745 (N.D. Miss. 2002) ("District courts within the Fifth Circuit, … including this court, have repeatedly distinguished and declined to follow *Tapscott*.") (collecting cases); *Johnson*, 214 F.R.D. at 420 ("Even if the Court were to adopt the holding of *Tapscott*, which it does not, the instant case does not present an example of fraudulent misjoinder.").

While *Tapscott*'s applicability within this circuit is far from clear,[13] the Court need not address *Tapscott*'s viability here because, even if *Tapscott* applied in the Fifth Circuit, this case would not justify invocation of the fraudulent misjoinder rule.

### 2. Fraudulent Misjoinder

As applied by district courts in this circuit, "[t]he fraudulent misjoinder analysis is two-fold: (1) has one defendant been misjoined with another defendant in violation of the applicable joinder rules; and (2) if so, is the misjoinder sufficiently egregious to rise to the level of a fraudulent

---

[12] *See also J.O.B Invs., LLC v. Gootee Servs., LLC*, 908 F.Supp.2d 771, 775 (E.D. La. 2012) ("Because the Fifth Circuit appears to have endorsed this principle and courts in the Eastern District of Louisiana have consistently applied *Tapscott*, the Court finds that defendants may argue that plaintiff's claims against its insurers and against the contractors have no real connection and thus are egregiously misjoined."); *Centaurus Unity v. Lexington Ins. Co.*, 766 F.Supp.2d 780, 789 (S.D. Tex. 2011) ("The Fifth Circuit has not directly applied the fraudulent-misjoinder theory, but it has cited *Tapscott* with approval and has acknowledged that fraudulent misjoinder of either defendants or plaintiffs is not permissible to circumvent diversity jurisdiction."); *Tex. Instruments Inc. v. Citigroup Glob. Mkts., Inc.*, 266 F.R.D. 143, 147 (N.D. Tex. 2010) ("The Fifth Circuit has never expressly adopted *Tapscott*'s theory of fraudulent misjoinder. However, it has strongly indicated that it would do so in an appropriate case.") (internal citations omitted).

[13] *See In re Prempro Products Liab. Litig.*, 591 F.3d 613, 620 n.4 (8th Cir. 2010) ("[T]he Eleventh Circuit is the only federal appellate court to adopt fraudulent misjoinder[;] the Fifth and Ninth Circuits have acknowledged it, although not expressly adopted it.") (internal citations omitted).

misjoinder." *Centaurus Unity*, 766 F.Supp.2d at 789 (footnotes omitted). To be sufficiently egregious to rise to the level of fraudulent misjoinder under *Tapscott*, the joined claims must "'have no real connection' to each other, such that joinder is 'bordering on a sham.'" *Tex. Instruments*, 266 F.R.D. at 149.

> A survey of the cases from this circuit which have considered the question suggests that misjoinder is so egregious as to be fraudulent only in the following three situations: (1) two or more lawsuits with little or no party overlap have been combined in the same action (i.e., there are multiple plaintiffs and defendants, but each plaintiff or discrete set of plaintiffs is suing only one defendant or a discrete set of defendants); (2) numerous plaintiffs have sued a common defendant and assert claims that have no shared factual element other than the presence of the common defendant; and (3) a single plaintiff or group of plaintiffs has joined multiple defendants in the same action and is asserting claims against each defendant that are both factually and legally unrelated.

*Id*. "These three fact patterns appear to mark the outer limits of *Tapscott*'s fraudulent-misjoinder principle. In all other circumstances, the district courts of this circuit have rejected claims of fraudulent misjoinder and granted motions to remand." *Id.* The consideration of fraudulent misjoinder requires the consideration of the connection between the claims against the diverse defendants and the claims against the non-diverse defendants and, to that limited extent, requires the consideration of the nature of the claims.

### a. *Claims against Agent Defendants*

The plaintiffs claim that the Agent Defendants, after being contacted by Jagir, "negligently fill[ed] out and submit[ed] the subject insurance application" for the Underwriters insurance policy. Doc. #2 at ¶¶ 16, 32. As mentioned above, the plaintiffs also allege that they "reasonably relied" on the Agent Defendants to properly "inspect" 35/55 Truck Stop and to "procure" the Underwriters insurance coverage. *Id.* at ¶¶ 30–31.

### b. *Claims against Underwriters*

In their state court complaint, the plaintiffs seek, among other things, a declaratory judgment against Underwriters "constru[ing] the pertinent policy provisions under the Underwriters policy and declar[ing] the rights of the Plaintiffs to payment of insurance proceeds ...." Doc. #2 at ¶ 23. As noted above, the plaintiffs allege that Underwriters has denied payment under the policy due to alleged omissions and/or representations[14] and that any such omissions or misrepresentations were the result of the Agent Defendants "negligently filling out and submitting the subject insurance application [for] and … procuring the subject policy from Underwriters." *Id*. at ¶¶ 20, 32. In this way, the alleged omissions and misrepresentations relate both to Underwriters' liability to the plaintiffs for coverage of 35/55 Truck Stop and the extent to which the Agent Defendants are liable in lieu of Underwriters. A real connection, therefore, exists between the plaintiffs' claims against the Agent Defendants and the plaintiffs' claims against Underwriters.

### c. *Claims against Northland*

In the state court complaint, the plaintiffs seek a declaratory judgment against Northland "constru[ing] the pertinent policy provisions under the [Northland] policy and declar[ing] the rights of the Plaintiffs to the additional payment of insurance proceeds ...." Doc. #2 at ¶ 27. The plaintiffs allege that "[i]n response to the position taken by Underwriters, Northland has taken the position that no further payment is warranted … because Underwriters has not denied the claim or voided the policy, and, therefore, Northland only owes a pro rata share of the loss." *Id*. at ¶ 22.

A real connection may exist between claims on separate insurance policies that were purchased at separate times where the policies "provided redundant and excessive coverage ...." *Marble v. Am. Gen. Life and Accident Ins. Co.*, 996 F.Supp. 571, 574 (N.D. Miss. 1998).

---

[14] In its answer, Underwriters argues that the plaintiffs' insurance policy application contains omissions and misrepresentations, calling into question the obligation to pay the plaintiffs' insurance claim. Doc. #9 at ¶¶ 17–18.

Accordingly, to the extent Northland denied coverage based on the alleged coverage of the Underwriters policy, a real connection exists between the plaintiffs' claims against Underwriters and the plaintiffs' claims against Northland.

### d. Summary

All of the plaintiffs' claims arise out of a fire occurring at the 35/55 Truck Stop. Accordingly, with regard to liability for uncovered damage resulting from that fire, the plaintiffs' claims against Northland are connected to the plaintiffs' claims against the Agent Defendants insofar as the Northland claims are connected to the Underwriters claims. Northland's liability bears on Underwriters' liability, which bears on the Agent Defendants' liability. A real connection, therefore, exists among all of the plaintiffs' claims. *See Taylor Mach. Works, Inc. v. Great Am. Surplus Lines Ins. Co.*, 635 So.2d 1357, 1361–62 (Miss. 1994) (reversing and remanding for further proceedings, holding insured may state claim against primary insurer for failure to pay claim and alternative claim against insurance agent for negligently procuring inadequate excess policy). The Agent Defendants are not fraudulently misjoined under the principles annunciated in *Tapscott*.[15]

### C. Costs and Attorney's Fees

The plaintiffs request an "award of the reasonable costs and attorney [sic] fees incurred by the Plaintiffs in securing [remand]." Doc. #13 at ¶ 6. Under 28 U.S.C. § 1447(c), "[a]n order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The district court's decision "to award or not to award

---

[15] To the extent the Removing Defendants assert that the Agent Defendants are fraudulently misjoined on the sole basis that they are misjoined under the applicable rules of procedure, regardless of whether the misjoinder is "egregious," the Court notes that *Tapscott* expressly rejects such a rule of "mere misjoinder," *Tapscott*, 77 F.3d at 1360; and that the Fifth Circuit has never suggested that it would adopt fraudulent misjoinder without an egregiousness requirement as an exception to required complete diversity. Nevertheless, as explained above, all claims arise out of a fire occurring at the 35/55 Truck Stop. Consequently, under either Mississippi's Rule 20 or the Federal Rule 20, all claims "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences," and share a "question of law or fact common to all defendants." The occurrence is the fire loss at 35/55 Truck Stop and the series of transactions is the successive purchases of insurance by the plaintiffs on 35/55 Truck Stop. The common question of law includes Northland's liability and the common question of fact includes the value of the fire loss.

attorney's fees" is reviewed for abuse of discretion." *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000). "[A]bsent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005). This standard also applies to the determination of whether to award costs and expenses on remand. *Glover v. DG La., LLC*, No. 14-151-SDD-SCR, 2014 WL 3513394, at *5 (M.D. La. July 15, 2014).

The Court finds that, although the Removing Defendants failed to establish that the Agent Defendants were improperly joined or fraudulently misjoined, they still had an objectively reasonable basis for removal. Therefore, an award of costs and attorney's fees is unwarranted.

### D. Summary

The non-diverse Agent Defendants are neither improperly joined nor fraudulently misjoined. Their presence in this action, therefore, destroys the complete diversity required for this Court to exercise diversity jurisdiction.

### III
### Northland's Motion to Sever

In its motion to sever, Northland seeks severance under Federal Rule of Civil Procedure 21. Doc. #19 at 8. Northland argues that "the claims filed against [Northland] and Underwriters" should be severed from "the claims filed against the Agent Defendants." Doc. #18 at 8. "In the alternative, [Northland] requests this Court … [to] sever the claims filed against [Northland] from the claims filed against Underwriters and the Agent Defendants." *Id*. Underwriters responds in opposition, asking the Court to deny Northland's request that Underwriters be severed "from the other co-Defendants should [the] Court remand," arguing that "severance would force Underwriters to defend [itself] in a separate forum, which could inequitably create *res judicata* and collateral estoppel issues." Doc. #27 at 1–2.

As explained above, the Agent Defendants are not improperly joined or fraudulently misjoined as defendants in this action. Consequently, this action will be remanded to state court for lack of subject-matter jurisdiction. The issue of party severance in this federal district court is now moot. *See Johnson*, 214 F.R.D. at 422 (denying as moot motion to sever after deciding to remand); *Tex. Instruments*, 266 F.R.D. at 153 (same).

Even if the motion were not mooted, it would be denied. Rule 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." "Rule 21 is an appropriate vehicle to sever or dismiss the claims of even properly joined parties." *Blum v. Gen. Elec. Co.*, 547 F.Supp.2d 717, 722 (W.D. Tex. 2008).

> Courts consider the following factors in determining whether to sever claims under Rule 21: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

*Johnson v. BAE Sys. Land & Armaments, L.P.*, No. 3:12-cv-1790, 2014 WL 1714487, at *35–36 (N.D. Tex. Apr. 30, 2014).

As explained above, the claims in this case arise out of the same transaction or occurrence (the insurance coverage for the fire at the truck stop). Furthermore, these claims present some common questions of law or fact (the alleged misstatements or omissions in the Underwriters policy application). For these reasons, the Court concludes that severance would not facilitate judicial economy and would not avoid any potential prejudice. Finally, there is no indication that different witnesses and documentary proof are required for the separate claims. Therefore, Rule 21 severance is inappropriate.

# IV
# Conclusion

For the reasons above, the motion to remand [13] is **GRANTED in Part and DENIED in Part**. The motion is GRANTED to the extent it seeks remand and is DENIED to the extent it seeks costs and attorney's fees. This action is **REMANDED** to the Circuit Court of Carroll County, Mississippi. Northland's Motion to Sever [19] is **DENIED as moot**.

**SO ORDERED**, this 29th day of September, 2016.

                                           **/s/ Debra M. Brown**
                                           **UNITED STATES DISTRICT JUDGE**